**Martin L. Roth, P.A.**
Attorney at Law

December 23, 2025

BY ECF & EMAIL (WoodsNYSDChambers@nysd.uscourts.gov)

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: United States v. Darrin Alexander Roker, 24 Cr. 655-004 (GHW), sentencing submission of defendant

Dear Judge Woods:

  I represent Darrin Roker in the above-referenced matter who is scheduled for sentencing on January 21, 2026, at 11:00 a.m. His Presentence Investigation Report (P.S.R.) was filed on December 15, 2025. The defendant plead guilty to Count One of the Superseding Indictment to the lesser included offense of participation in a conspiracy to import into the United States cocaine. The offense carries a maximum sentence of twenty years, a maximum supervised release term up to life and a mandatory supervised release term of three years.

  The P.S.R. has correctly calculates the advisory Guideline sentence range at level 37, Criminal History one with an imprisonment range of 210 - 262 months. The statutory maximum sentence is 240 months. The defendant finds that the P.S.R. is also accurate regarding the "Offender Characteristics" and factual summary of the pertinent case facts.

  Defendant respectfully requests the Court to grant a very substantial variance from the advisory Guidelines range. The defendant began to cooperate with the government almost immediately upon his arrival in the District after being arrested in Miami, Florida on November 26, 2024. After plea discussions with the U.S. Attorney's Office defendant waived the right to receive discovery and proceeded to begin a series of debriefings to describe his involvement and the involvement of others in this conspiracy. As explained by the defendant, he was placed back on active duty with the Bahamian Defense Forces, Maritime unit. He was no longer shipboard but had a position where he had access to the schedules and location of patrols. He was recruited to the conspiracy to pass along that information to co-conspirators to advance the cause of the conspiracy. He saw that the Defense Forces and Bahamian law enforcement had become deeply corrupted and compromised by drug trafficking. Government officials were co-opted. after his release from the hospital in the Bahamas, where he was treated for prostate cancer, Rather than find the courage to oppose this corruption he turned a blind eye and participated. In October of 2024, wanting to get Mr. Roker more involved, a co-conspirator brought him to a meeting with multiple members of the conspiracy where he was requested and he agreed to be more involved providing information to the group. He was given $20,000.00 at the meeting which he split with the co-conspirator who brought him to the meeting. On November 26, 2024, his arrest concluded his activity in support of the conspiracy.

**Martin L. Roth, P.A.**
Attorney at Law

After plea discussions with the U.S. Attorney's Office defendant waived the right to receive discovery and proceeded to begin a series of debriefings to describe his involvement and the involvement of others in this conspiracy. As explained by the defendant, he was placed back on active duty with the Bahamian Defense Forces, Maritime unit. He was no longer shipboard but had a position where he had access to the schedules and location of patrols. He was recruited to the conspiracy to pass along that information to co-conspirators to advance the cause of the conspiracy. He saw that the Defense Forces and Bahamian law enforcement had become deeply corrupted and compromised by drug trafficking. Government officials were co-opted. after his release from the hospital in the Bahamas, where he was treated for prostate cancer, Rather than find the courage to oppose this corruption he turned a blind eye and participated. In October of 2024, wanting to get Mr. Roker more involved, a co-conspirator brought him to a meeting with multiple members of the conspiracy where he was requested and he agreed to be more involved providing information to the group. He was given $20,000.00 at the meeting which he split with the co-conspirator who brought him to the meeting. On November 26, 2024, his arrest concluded his activity in support of the conspiracy.

The defense and the government had informal discussions that if defendant's cooperation continued, including truthful testimony at any future trial, the government might recommend a sentence of time served once the trial was concluded.

Everything changed on June 2, 2025. BOP Health Services was aware that Mr. Roker was treated for prostate cancer in 2022 in the Bahamas. At the time a cancerous tumor spread to his spine leaving him paralyzed. He was hospitalized, treated with chemo and radiation and released from treatment in the Bahamas in 2024. In June 2025 BOP Health Services noted that Mr. Roker's P.S.A. had a "fourfold" increase. He was referred to Brooklyn Cancer Center for a skeletal bone scan. His P.S.A. was at 23 on July 10, 2025, rising from 4.06. He was diagnosed provisionally with Metastatic Prostrate cancer. BOP Health requested all his treatment records from the Bahamas which counsel had available and provided the reports to health services. The diagnosis was confirmed by Dr. Shahzaib Nabi of metastatic prostate cancer with bone metastases at L3 and T12 (spine) and on the pelvis. His report of 8/20/25 provides "The patient's disease is currently at a metastatic (stage IV) stage, as evidenced by multiple bony lesions on bone scan and a significantly elevated PSA." The report concludes that "Prognosis in metastatic prostate cancer has improved with newer systemic therapies, but the disease remains incurable; the primary goals are prolongation of survival, symptom control, and maintenance of quality of life."

Mr. Roker was last seen by Dr. Nabi on December 16, 2025. That report has not yet been made available to counsel but has been requested from the hospital with a HIPPA form. Counsel will file that report with the Court as it becomes available. The AUSA's have been very helpful in assisting counsel to obtain BOP reports and counsel anticipates they will share the latest report with defense counsel after the Christmas holiday.

**Martin L. Roth, P.A.**
Attorney at Law

I ask the Court to note that the government agreed to a plea to a reduced charge with no minimum mandatory prison time. Counsel is unaware of the government's ultimate position on the defense variance request, but they have crafted a plea resolution that provides the Court with sentencing discretion.

These sentencing issues regarding a terminally ill defendant often arise after sentencing when an individual develops a terminal illness while serving his sentence. 18 U.S.C. Section 3582 provides factors in addition to 3553 (a) factors a sentencing court should consider post sentencing to reduce a sentence of imprisonment. This statute prominently includes a diagnosis of a terminal illness as a basis to reduce an already imposed sentence.

18 U.S.C Section 3553(a) provides:

(a) Factors To Be Considered in Imposing a Sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-
(1) the nature and circumstances of the offense and the history and characteristics of the defendant.
(2) the need for the sentence imposed
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.
   (B) to afford adequate deterrence to criminal conduct.
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Defendant respectfully would offer that the defendant's nature (first offender with zero criminal history points), his characteristics described in the P.S.R. and his character letters, his vulnerability after his cancer treatment to oppose and reject the pervasive corruption that existed in the Defense and police forces, together with his need for medical care support this variance request.

Defendant seeks a variance and a sentence of supervised release. He will be deported to the Bahamas as the offense of conviction is classified as an aggravated felony under Title 8 of the U.S. Code. He will pose no future threat to the public. It will promote overall respect for our system of justice to allow the defendant to die in his home in the company of his wife and family in the Bahamas.

Defendant's wife, Nicole Roker has developed a realistic medical plan that is attached to this submission letter as an exhibit. This submission has attached as exhibits (1) defendant's medical reports, (2) Medical care plan, and (3) Report of Dr. Shahzaib Nabi, defendant's oncologist.

Counsel is of the opinion that it will be difficult, costly and burdensome for the Bureau of Prisons to provide the defendant with the quality of care he will require. The progress of his disease will leave him in need of the care his wife and family can provide. He will suffer extreme pain needing medication. He will likely be bedridden. He will be impacted psychologically. He has no family in the United States to visit him in prison.

**Martin L. Roth, P.A.**
Attorney at Law

    Respectfully the defendant requests the Court to consider all the factors outlined in this submission and grant a variance, sentencing the defendant to the time already served followed by a term of supervised release allowing him to serve that term at home in the Bahamas.

Respectfully Submitted,


Martin L. Roth
Enc.
Cc: All counsel of record