

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 14, 2026

**BY ECF & EMAIL**

The Honorable Gregory H. Woods
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Darrin Alexander Roker*, 24 Cr. 655 (GHW)

Dear Judge Woods:

      The Government respectfully submits this letter in advance of the January 21, 2026 sentencing of defendant Darrin Alexander Roker (the "defendant") in the above-captioned case. The defendant's crimes are exceedingly serious—he abused his position of authority within the Bahamian military to help facilitate the planned importation of nearly a thousand kilograms of cocaine into the United States. Nevertheless, in light of the defendant's ███████████████, the Government submits that a sentence below the stipulated United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") sentence of 240 months' imprisonment—but no less than the 60 months' imprisonment recommended by Probation—would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case.

**I.**    **Background**

      **A.**    **Overview**

      Since 2023, the Drug Enforcement Agency ("DEA")'s Special Operation Division, Bilateral Investigations Unit ("SOD-BIU") and the U.S. Attorney's Office for the Southern District of New York ("SDNY") have been investigating a large-scale narcotics trafficking conspiracy involving the smuggling of vast quantities of cocaine through The Bahamas into the United States. This drug trafficking takes place under the corrupt protection of Bahamian government officials, including high-ranking members of the Royal Bahamas Police Force ("RBPF") and the Royal Bahamas Defence Force ("RBDF"), who facilitate the receipt, protection, and safe passage of illicit cocaine shipments through the airports and ports of The Bahamas in exchange for bribe payments. During the investigation, SOD-BIU confidential sources ("CSs") have engaged in extensive negotiations with the defendant and his co-conspirators regarding the smuggling of several large cocaine shipments into and through The Bahamas, for eventual transportation into the United States.

### B. Offense Conduct and Procedural History

The charged conspiracy includes drug traffickers in The Bahamas, Colombia, and elsewhere who work together to receive multi-ton loads of cocaine sent to The Bahamas from, among other places, Colombia and Venezuela. Cocaine-laden aircraft, including U.S.-registered planes, are received at remote airstrips and at larger airports in The Bahamas under the supervision of corrupt RBPF and RBDF officers and other Bahamian officials who work with, and accept bribes from, the drug traffickers, in exchange for those traffickers' secure access to ports and airports, access to law enforcement information, and protection from investigation and arrest. In maintaining security for the drug-trafficking conspiracy, members of the conspiracy (including RBPF officials) use weapons to protect and further the cocaine trafficking. Once the cocaine arrives in The Bahamas, drug traffickers transport the drugs to the United States using go-fast vessels, yachts, and fishing boats.

The defendant, a Bahamian citizen, was a Chief Petty Officer in the RBDF, which is the military of The Bahamas. The defendant facilitated maritime drug trafficking by using his official position to, among other things, obtain sensitive information about law enforcement operations conducted by the U.S. Coast Guard and a trilateral counternarcotics program called Operation Bahamas, Turks and Caicos, or "OPBAT," which was designed to police drug-trafficking operations through 100,000 square miles of ocean in the Caribbean.

For example, starting in or about August 2024, SOD-BIU CSs were coordinating with Colombian drug trafficker (and co-defendant) Luis Fernando Orozco-Toro to negotiate smuggling a shipment of approximately 900 to 1,000 kilograms of cocaine from South America to the United States via The Bahamas. During those negotiations, Orozco-Toro introduced the CSs to certain of his Bahamian drug trafficking partners, including co-defendant Davon Revion Khaim Rolle, who, in turn, introduced the CSs to other members of the drug trafficking organization, including the defendant. Subsequently, the defendant joined a meeting in or about October 2024 involving Fernando, Rolle, and a CS, during which they discussed the logistics of trafficking the approximately 900 to 1,000-kilogram cocaine load.

During another meeting among CSs and various of the drug traffickers on or about November 6, 2024, the defendant explained that he could provide the CSs—whom he understood to be drug traffickers seeking to transport approximately 900 kilograms or more of cocaine through The Bahamas and into the United States—with information regarding the location of U.S. Coast Guard and RBDF vessels and advance warning of potential interdiction operations, and that he could then delay the arrival of RBDF cutters to allow traffickers to escape detection. In that same conversation, the defendant provided additional advice about how a drug smuggler could avoid interdiction while transiting through The Bahamas, including the type of boat to use and the operations of Bahamian customs officials. During that meeting, the defendant accepted a $20,000 bribe payment from a CS as an upfront payment for the services he offered to facilitate the drug trafficking.

On November 21, 2024, a grand jury in this District returned a three-count indictment (the "Indictment") charging the defendant and 12 others with (1) conspiring to (i) import five kilograms or more of cocaine into the United States, (ii) manufacture, distribute, and possess with intent to

distribute five kilograms or more of cocaine, intending, knowing, or having reasonable cause to believe that it would be unlawfully imported into the United States, and (iii) manufacture, distribute, and possess with intent to distribute five kilograms or more of cocaine on board an aircraft registered in the United States, in violation of Title 21, United States Code, Sections 952(a), 959(a), 959(c), 960(a)(1), 960(a)(3), 960(b)(1), and 963 (Count One); (2) using, carrying, or possessing firearms in furtherance of the narcotics importation conspiracy charged in Count One, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2 (Count Two); and (3) conspiring to use, carry, or possess firearms in furtherance of the narcotics importation conspiracy charged in Count One, in violation of Title 18, United States Code, Section 924(o) (Count Three).

On November 25, 2024, the defendant was arrested in the Southern District of Florida based on the charges set forth in the Indictment. The defendant initially appeared in the U.S. District Court for the Southern District of Florida, before then being transferred to this District and first appearing before this Court on January 10, 2025.

On October 24, 2025, the defendant pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to the lesser-included offense of conspiring to (i) import cocaine into the United States, (ii) manufacture, distribute, and possess with intent to distribute cocaine, intending, knowing, or having reasonable cause to believe that it would be unlawfully imported into the United States, and (iii) manufacture, distribute, and possess with intent to distribute cocaine on board an aircraft registered in the United States, in violation of Title 21, United States Code, Sections 952(a), 959(a), 959(c), 960(a)(1), 960(a)(3), 960(b)(3), and 963.

### C.   Plea Agreement, Guidelines Calculation, and PSR

In the Plea Agreement, the parties stipulated that, based on an offense level of 39 and a Criminal History Category of I, the defendant's applicable Guidelines range would be 262 to 327 months' imprisonment. The parties calculated the defendant's offense level by applying a base offense level of 38 because the offense involved more than 450 kilograms of mixtures and substances containing a detectible amount of cocaine; a two-level increase because members of the conspiracy carried firearms in furtherance of the conspiracy, which was reasonable foreseeable to the defendant; a two-level increase because the defendant abused his position of public trust within the Bahamian military in a manner that significantly facilitated the commission or concealment of the offense; and a three-level reduction for acceptance of responsibility. The parties calculated the defendant's Criminal History Category based on an understanding that he has no prior criminal convictions. Because, however, the statutorily authorized maximum sentence for the offense to which the defendant pleaded guilty is 240 months' imprisonment, which is less than the otherwise applicable Guidelines range of 262 to 327 months' imprisonment, the parties agreed that the applicable Guidelines sentence in this case (the "Stipulated Guidelines Sentence") is 240 months' imprisonment.

In its Presentence Investigation Report (the "PSR"), Probation generally concurs with the parties' computation of the applicable Guidelines range, with one exception: in contrast to the parties, Probation also applies a two-level "zero-point offender" reduction pursuant to U.S.S.G. § 4C1.1, resulting in an offense level of 37 and a Guidelines range of 210 to 262 months'

imprisonment. (PSR ¶¶ 53-68, 106-07). Probation takes the position that because the defendant did not personally possess a firearm in connection with the offense, he remains eligible for the zero-point-offender reduction, regardless of whether it was reasonably foreseeable to the defendant that one or more of his co-defendants would possess a firearm in connection with the offense. (PSR ¶¶ 63, 107).[1]

Probation further recommends a significant downward variance to 60 months' imprisonment. (PSR at 25). Probation cites, as aggravating factors, the seriousness of the importation of cocaine into the United States; the large quantity of cocaine the defendant agreed to help traffic; the defendant's abuse of his position of trust as a member of the RBDF; and the defendant's accepting a bribe in connection with the drug trafficking conspiracy. (PSR at 25-26). Probation also cites mitigating factors, including the defendant's lack of prior criminal history; the difficult economic and other circumstances of his upbringing; his established record of charitable works; and ███████████████████████████████████████. (PSR at 15-16, 26).

### D. Defendant's Medical History



---

[1] In his submission, the defendant states that Probation "correctly calculates the advisory Guidelines sentence range." (Dkt. 92 ("Def. Mem.") at 1). Based on discussions with defense counsel, the Government understands that although the defendant does not believe that Probation erred in applying the zero-point-offender reduction, the defendant stands by the Plea Agreement and the Stipulated Guidelines Sentence. The Government agrees that the parties—though not the Court—remain bound by the terms of the Plea Agreement.



After conferring with the Bureau of Prisons (the "BOP"), the Government understands that if the defendant is sentenced to an additional period of incarceration, the defendant—like other inmates with acute medical problems or chronic care requirements—will be referred to the BOP's Office of Medical Designations and Transportation for designation to an appropriate facility, likely one of the BOP's six Federal Medical Centers. Once at his designated institution, any ongoing medical care of the defendant requiring hospitalization will primarily be provided in a nearby community hospital.

**II.     Applicable Law**

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any pertinent policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

  (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B)     to afford adequate deterrence to criminal conduct;

  (C)     to protect the public from further crimes of the defendant; and

  (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

"[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)); *see also United States v. Bryant*, 976 F.3d 165, 181 (2d Cir. 2020) ("In the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." (quoting *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006))).

### III. Discussion

The Government respectfully submits that a below-Guidelines sentence of at least 60 months' imprisonment would appropriately take into account the sentencing factors set forth in Section 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and provide the defendant with needed medical care.[2]

There is no question that the defendant's crimes are serious. The Bahamas has become a major transit hub for massive quantities of cocaine flooding the United States, causing untold harm to our communities. This has come to pass through the involvement of Bahamian officials, like the defendant, who have abused their positions of trust and authority to protect and enable drug traffickers operating in the region and line their own pockets in the process. Indeed, the defendant used his official position with the Bahamian military to obtain sensitive information about U.S. Coast Guard and OPBAT drug interdiction operations, and then offered that information—and additional, specific advice concerning how best to avoid law enforcement detection and apprehension—to drug traffickers planning a shipment of nearly 1,000 kilograms of cocaine from South America to the United States via The Bahamas. The defendant further accepted a $20,000 bribe, as an upfront payment for the services and advice he offered to facilitate the drug trafficking.

Ordinarily, offense conduct as serious as this drug trafficking conspiracy, committed by an individual who abused his official position and accepted a $20,000 bribe in furtherance of and to facilitate such large-scale drug trafficking, would call for a substantial sentence in line with the Stipulated Guidelines Sentence. The Government acknowledges, however, that the defendant's present medical condition—namely, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬—is a powerful mitigating factor. ▬▬▬▬▬▬▬▬

---

[2] In his submission, the defendant states that "[t]he defense and the government had informal discussions that if [the] defendant's cooperation continued, including truthful testimony at any future trial, the government might recommend a sentence of time served once the trial was concluded." (Def. Mem. 2). To be clear, the Government did not at any time state or suggest what sentence—time served or otherwise—it might or might not recommend at sentencing if the defendant became a cooperating witness. Based on discussions with defense counsel, the Government understands that the defense does not dispute this, and did not intend to suggest otherwise in its submission.

██████████████████████████████████████████████████
████████████████████████████. The BOP has conveyed that it is equipped to manage these medical needs, but nevertheless, in light of the defendant's prognosis, the Government does not believe that a Guidelines sentence of 240 months' imprisonment would be appropriate in this case. Nor, however, would the time-served sentence requested by the defendant be appropriate, given the seriousness of the defendant's offense conduct and the need to deter others from engaging in similar courses of conduct. As reflected in the conduct at issue in this case, and other, similar prosecutions involving rampant corruption that aids cocaine trafficking of this magnitude, corrupt officials like the defendant are essential cogs in the distribution of cocaine to the United States. The sentence imposed should send a clear message to other police and government officials considering a similar path that such conduct will not be tolerated.

Balancing these considerations, and recognizing the bespoke nature of this case and the defendant's medical situation, the Government respectfully submits that a sentence below the Stipulated Guidelines Sentence of 240 months' imprisonment, but no less than the 60 months' imprisonment recommended by Probation, would be sufficient, but not greater than necessary, to achieve the objectives of Section 3553(a).

## IV. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a below-Guidelines sentence of no less than 60 months' imprisonment.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:      /s/
Jonathan L. Bodansky
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2385/2314

cc: Martin Lawrence Roth, Esq.